**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| | ) **Case No.: SACR 14-00183-CJC** |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) **ORDER DENYING DEFENDANT'S** |
| **v.** | ) **MOTION TO SUPPRESS EVIDENCE** |
| | ) **(SEARCH WARRANT)** |
| **ROBERT RUBEN ORNELAS,** | ) |
| | ) |
| **Defendant.** | ) |

## I. INTRODUCTION

Defendant Robert Ornelas is currently charged with two counts of engaging in illicit sexual conduct in a foreign place in violation of 18 U.S.C. § 2423(c), three counts of production of child pornography outside of the United States in violation of 18 U.S.C.

§ 2251(c), and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B),(b)(2).  Before the Court is Defendant's motion to suppress all evidence derived from the search warrant executed at his home on June 11, 1013.  (Dkt. 77 ["Mot."].)  For the following reasons, the motion is DENIED.

## II.  BACKGROUND

On June 6, 2013, the Government obtained a search warrant for Defendant's person, his residence, and three vehicles associated with Defendant's name or his address.  (Mot. Ex. B.)  Monica Abend, a special agent with Department of Homeland Security, Homeland Security Investigations, and United States Immigration and Customs Enforcement, submitted an affidavit and application to the California Superior Court in support of the warrant.  (Mot. Ex. A.)

### A.  Agent Abend's Affidavit of Support

At the time Agent Abend wrote her affidavit of support, she had thirteen years' of law enforcement experience; had attended six conferences and similar events related to the investigation of crimes against children, which involved at least 120 hours of outside training; and had participated in or personally served approximately fifty search warrants. (*Id.* at 1–3, 7.)  Her affidavit laid out the following information:

1. On April 17, 2013, Special Agent Cynthia Kayle of the Federal Bureau of Investigation (FBI) contacted Agent Abend about information she had received concerning Defendant, who was believed to possess child pornography.  (*Id.* at 3.) The case came to light after Defendant's brother Ross Ornelas, who lived with Defendant, viewed Defendant's computer and contacted the FBI regarding its contents.  (*Id.*)

2. On May 1, 2013, Agent Abend and Agent Kayle interviewed Ross Ornelas, who advised them of the following:

    a. Once in the 1990s, Ross Ornelas went into Defendant's room and noticed a photo album that was filled with child pornography images of girls who were approximately twelve years old. (*Id.* at 4.) His mother confronted Defendant and destroyed the album because she "didn't want him to get into trouble." (*Id.*)

    b. Approximately fifteen years prior, a twelve year old victim accused Defendant of inappropriately touching her. (*Id.*) The victim thereafter refused to be left in the same room as Defendant. (*Id.*)

    c. In approximately 2010, a neighbor came to Defendant and Ross Ornelas's home and told Ross Ornelas that Defendant had "peeped into his teenage daughter's bedroom." (*Id.*) Ross Ornelas told the neighbor that Defendant had been in his own bedroom at the time "because he didn't want [Defendant] to get into trouble." (*Id.*)

    d. In approximately May 2012, while Defendant was in the Philippines, Ross Ornelas enlisted the help of his cousin, Daniel Huerta, to search for evidence of Defendant's fraudulent activity regarding his mother's rental property. (*Id.*) He saw numerous images that appeared to be child pornography on Defendant's computer. (*Id.*) He believed Defendant was depicted in some of the images having sex with the young girls, but he could not see the man's face. (*Id.*) He believed many of the pictures were taken during Defendant's previous trips to the Philippines. (*Id.*)

3.  On May 9, 2013, Agent Kayle interviewed Daniel Huerta, who advised her of the following:

    a.  While Mr. Huerta was helping Ross Ornelas search for evidence of Defendant's fraudulent activity, he "did a basic search for images and observed many photos that appeared to be from the Philippines.  The images contained groups of people, including adults, children, and [Defendant]." (*Id.* at 4–5.)  Huerta began to see child pornography images, many of which depicted children between the ages of two and seven.  (*Id.* at 5.)  Huerta believes some of these images were taken in the Philippines, while others showed white or European children.  (*Id.*)  Some of these photos showed the child's whole body, while others focused on a part of the body such as the genitals.  (*Id.*)  He estimated that out of the thousands of images on the computer, approximately thirty percent were child pornography images. (*Id.*)

    b.  Huerta described three specific images to Agent Kayle as follows: "An overview of an Asian or Filipino boy, without the head pictured, approximately seven (7) or eight (8) years old, nude, lying down on a mattress"; "A nude girl, approximately four (4) years old, sitting on the ground or a pad. The picture is taken from approximately six (6) to eight (8) feet away"; and "A nude girl, possibly the same girl from the previous image, but the face is not shown.  The focus of the image is a close-up of the girl's genitals."  (*Id.*)

    c.  Finally, Defendant had previously told Huerta that Defendant engages in "chats" on the computer.  (*Id.*)  While searching Defendant's computer in May 2012, Huerta viewed the chat logs and saw chats that were "explicit

and gross." (*Id.*)  The chats showed Defendant talking to a minor about having sex with her and the minor's mother at the same time.  (*Id.*)

Agent Abend's affidavit also provided more general statements based on her training and experience, including a "collector profile" describing the practices of those who possess child pornography.  It explained, among other things, that "[a]ny communications related to the exchange of child erotica or child pornography, or simply saved chats with victims and/or like-minded individuals are important evidence" showing that such a defendant (1) views minors as sexual objects, (2) has an intimate knowledge of what they are seeking out on the Internet, (3) is responsible for any child pornography on their computer, and (4) has specific sexual preferences as evidenced by the pornography in their possession.  (*Id.* at 7.)  She averred that "individuals like ORNELAS who view minors as sexual objects will sometimes create and/or collect child erotica or child pornography.  They will usually keep and cherish it, and they rarely discarded these images and/or video clips even at the threat of discovery by law enforcement."  (*Id.* at 6.)  These materials can include hard copies, and are usually "maintained in a secure place, most often a residence; and they are stored in a manner to avoid detection by law enforcement."  (*Id.*)

## B.  The Search Warrant

On June 6, 2013, Orange County Superior Court Judge Robert R. Fitzgerald issued the search warrant.  (Mot. Ex. B at 1.)  The warrant authorized the search of Defendant, all vehicles associated with him or his address, and  "all rooms, attics, basements, and any other parts therein, the surrounding grounds and any garages, storage rooms, trash containers, safe's [sic] or other locked containers and outbuildings of any kind located thereon."  (*Id.* at 1–2.)  The warrant also added the requirement that the search will be conducted in a "scientific manner" that would "maintain the integrity of the evidence as

well as to recover hidden, erased, compressed, encrypted, or password-protected data." (*Id.* at 4.)

The warrant authorized the search of "any items tending to establish the identity of persons who have dominion and control of the location, premises, automobiles, or items to be seized" and "any and all items which constitute evidence and/or fruits and instrumentalities of violations of California Penal Code Section 288.3(a), concerning communications with a minor for sexual purposes as well as California Penal Code Section 311.1(a) through 311.11(d), concerning the possession, distribution, and production of child pornography." (*Id.* at 3–4.)  It also itemized many types of correspondence, devices, and electronically stored data that could be searched, such as "[a]ny correspondence, records, 'electronic calendar/address books,' or any other storage 'media,' or 'writings,' including all information stored within the computer(s), computer system(s), cell and/or 'smart' phones; together with indicia of use, ownership, possession, or control of such records." (*Id.* at 4.)  Finally, it authorized the search of correspondence or records showing contact information of minors depicted in child pornography or child erotica, and any written or visual materials or depictions dealing with child development, sex education, child pornography, sexual abuse of children, incest, child prostitution, missing children, and the like.  (*Id.*)

Law enforcement executed the search warrant on June 11, 2013.  They seized computer systems, thumb drives, memory cards, memory sticks, seven boxes of documents and photographs, thirteen boxes of videotapes, two bags of film, one bag of film canisters, three boxes of CDs/DVDs, a box of floppy disks, and two bags of film canisters. (Mot. at 7; *id.* Ex. E; *id.* Ex. F.)  On July 12, 2016, Defendant moved to suppress the search warrant and all derivative evidence.  (Mot.)

## III. LEGAL STANDARD

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The task of the judicial officer issuing a search warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (internal citations omitted).  A reviewing court need only ensure that the magistrate had a "substantial basis" for finding probable cause. *Id.* Probable cause is a "fair probability, not certainty or even a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006).  In making such probable cause determinations, Courts are limited to the "four corners" of the written affidavit given under oath.  *U.S. v. Luong*, 470 F.3d 898, 904 (9th Cir. 2006).  In making their determinations, "issuing judges may rely on the training and experience of affiant police officers."  *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002).

## IV. ANALYSIS

Defendant argues that the search warrant was not supported by probable cause, that it was based on an affidavit that contained deliberate or reckless misstatements or omissions, that it was overbroad, and that it lacked sufficient search procedures and protocols.  (Mot. at 9–17).   The Court considers each of Defendant's argument in turn.

**A.  Probable Cause**

    i.    **Staleness**

First, Defendant contends that the information contained in the affidavit was too "stale" to support probable cause, because "probable cause here rested on a claim that child pornography had been seen on one computer, on one occasion, one year earlier." (*Id.* at 10.)  Defendant points out that his brother waited one year after viewing the offending computer before contacting the FBI, and that the affidavit failed to explain the reason for this delay or confirm that the suspect computer was still present at Defendant's home one year later.  (*Id.*)

"[T]he mere lapse of substantial amounts of time is not controlling in a question of staleness."  *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988).  Rather, courts must "evaluate staleness in light of the particular facts of the case and the nature of the criminal activity and property sought." *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997).  The information offered in support of the application for a search warrant is not stale if "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises."  *Id.* at 745–46 (quoting *United States v. Gann*, 732 F.2d 714, 722 (9th Cir.1984)).

Defendant's argument regarding staleness fails to consider the affidavit as a whole, which presented allegations that over several decades, Defendant had demonstrated a pattern of sexual interest in minors by (1) possessing hard copy photographs of child pornography, (2) inappropriately touching a twelve year old girl, (3) looking into the window of an underage neighbor, (4) possessing digital photographs on his computer of child pornography, and (5) communicating with minors about engaging in sexual conduct with them.  (*See* Mot. Ex. A.)  The affidavit does not rely on one instance of possession

of digital child pornography.  Rather, it notes five separate incidents, all of which are consistent with conduct of one who is sexually interested in minors, and two of which deal directly with possession of child pornography in digital and hard copy form.  (*See id.*)  Under the totality of circumstances, the five separate incidents reported in the affidavit provided a substantial basis for the state court judge to conclude that law enforcement had probable cause to suspect in June 2013 that Defendant possessed child pornography and engaged in communications with a minor for sexual purposes.  (*See* Mot. Ex. B.)

Here, Agent Abend's affidavit stated that, based on her training and experience, defendants facing child pornography charges "usually keep and cherish" the material, "rarely discard" them, and usually secure them in their homes "in a manner to avoid detection by law enforcement."  (Mot. Ex. A at 6.)  Given the evidence in the affidavit of Defendant's continuing pattern of sexual interest in minors, and the fact that Defendant was charged with possession of material that he is unlikely to discard and very likely to hide, there was a substantial basis to conclude that law enforcement had probable cause to believe that Defendant still possessed child pornography, including the materials Ross Ornelas observed, in his home.  *See, e.g.*, *United States v. Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013) ("the state court judge had ample reason to believe that the [child pornography] video or other digital child pornography files would be present at [the defendant's] residence a mere 20 months after the [child pornography] incident" informing the search warrant, because the affidavit explained that such individuals "rarely, if ever, dispose of sexually explicit images of children" which they treat as as "prized possessions.").  Therefore, the affidavit's information was not stale and supported a finding of probable cause.

//

//

//

### ii.    Boilerplate Language

Defendant next argues that the affidavit cannot support a finding of probable cause because it relies on "boilerplate language" as to how child pornography is generally kept. (Mot. at 11.)  However, courts regularly permit these types of generalized "collector profiles" in child pornography cases to provide context for the conclusion that the incriminating material that was in a defendant's possession at some point is still on the premises to be searched.  *See United States v. Hay*, 231 F.3d 630, 636 (9th Cir. 2000); *Schesso*, 730 F.3d at 1047; *Lacy*, 119 F.3d at 746.

In criticizing the use of collector profiles, Defendant relies heavily on the Ninth Circuit's ruling in *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990).  (Mot. at 1.)  In *Weber*, however, the affidavit at issue lacked "a whit of evidence" that the defendant was a child molester or possessed child pornography.  *Weber*, 923 F.2d at 1345.  The court explained that the boilerplate language about the habits of child molesters, pedophiles, and child pornography collectors was insufficient to establish that the defendant initially possessed child pornography.  *Id.*  Here, by contrast, the affidavit's generalized language is only used to support the government's belief that child pornography was *still* in Defendant's home.  (*See* Mot. Ex. A; *id.* Ex. B.)  The affidavit does not rely on generalized statements to establish probable cause that Defendant had at some point possessed child pornography.  *See Gourde*, 440 F.3d at 1068 (the use of collector profiles is not fatal in the probable cause analysis where the affidavit also contains specific facts regarding the defendant's individualized conduct); *Lacy*, 119 F.3d at 745–46 (same).

The Court also disagrees with Defendant's assertion that the affidavit has "no specific basis to believe that people who commit these offenses actually conform to predictable patters or that the affiant has adequate experience with these cases to reach informed opinions."  (Mot. at 11.)  The affidavit demonstrates that when Agent Abend

executed it, she had thirteen years' of law enforcement experience, had attended many conferences and obtained extensive specialized training regarding crimes against children, and had participated in or personally served approximately fifty search warrants.  (*Id.* Ex. A at 1–3, 7.)  Contrary to Defendant's assertion, the state court judge reasonably relied on Agent Abend's statements concerning the typical practices and mindsets of those charged with possession of child pornography and related crimes.[1]

Simply stated, there was a substantial basis for the state court judge to conclude that the affidavit contained sufficient probable cause to support the issuance of the search warrant.

## B. Misstatements and Omissions

Defendant also challenges the validity of the supporting affidavit by claiming that it contains reckless and/or deliberate misstatements and omissions of material facts. (Mot. at 12–14.)

Affidavits supporting a search warrant enjoy a "presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  To challenge the validity of a warrant affidavit, Defendant must make a "substantial preliminary showing" that (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and (2) "the allegedly false statement is necessary to the finding of probable cause."  *Id.* at 155–56.  *See also United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000.)  If a defendant satisfies this test, he may obtain an evidentiary hearing (known as a *Franks* hearing) to test the validity of the warrant.  "To mandate an

---

[1] Defendant also fleetingly remarks that the search warrant lacked probable cause to justify the "search and seiz[ure] virtually anything and everything, anywhere in the residence (and vehicles)."  (Mot. at 12.) This sentence closely tracks Defendant's separate argument challenging the breadth of the search warrant, (*id.* at 14–16), so the Court addresses this argument in full in subsection C, below.

evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171.

Defendant requests a *Franks* hearing concerning the validity of the affidavit. (Mot. at 12–14.) First, Defendant claims that the affidavit incorrectly states that Ross Ornelas told the FBI that he found a photo album in Defendant's room in the 1990s filled with pornographic images of girls that were about 12 years old. (Mot. at 13.) Ross Ornelas's declaration submitted in support of Defendant's motion to suppress states that he told the FBI that it was Defendant's *mother* who found and burned the album, and that the album contained photos of college-aged girls, one of whom Ross Ornelas recognized as Defendant's former girlfriend. (Mot. Ex. C ¶¶ 2–3.) The declaration also states "I do not ever recall telling any law enforcement agent of the FBI at any time that there was child pornography in the photo album of girls who looked to be approximately 12 years old." (*Id.* ¶ 3.)

Defendant has not met his burden under *Franks* of showing recklessness or deliberateness on the part of Agent Abend. The information in the affidavit concerning child pornography and images of twelve year old girls is consistent with the reports documenting Ross Ornelas's two separate interviews with the FBI on April 12, 2013 and May 1, 2013. (*See* Dkt. 93 ["Opp."] Ex. 1; *id.* Ex. 2.) Agent Abend's affidavit only references the content of the May interview, where she and Agent Kayle were present and spoke with Ross Ornelas. (Mot. Ex. A.) Agent Abend does not appear to have been present for the April interview. (*See* Opp. Ex. 1.) Therefore, it was reasonable for Agent Abend to rely on the May interview in gathering information in support of the search warrant. That Ross Ornelas submitted a declaration three years later with different facts, and stating that he does not recall mentioning child pornography, does not show that

1   Agent Abend recklessly or deliberately made misstatements.  Additionally, Ross

2   Ornelas's declaration makes absolutely no mention of the May interview on which Agent

3   Abend's affidavit was based—it only states that he made a walk-in complaint to the FBI

4   on April 12, 2013.  (*See* Mot. Ex. C.)  Finally, the discrepancy concerning *who* found the

5   album is immaterial, since it does not negate the incriminating content—someone

6   nevertheless found the photo album in Defendant's room.  In any event, while the report

7   from the April interview states that Defendant's mother found the photo album, (Opp. Ex.

8   1), the affidavit's statement that Ross Ornelas found it is consistent with the report from

9   the May report, where Agent Abend was present, (Mot. Ex. A; Opp. Ex. 2).

11       Defendant also argues that the affidavit misrepresents Ross Ornelas's statements

12   regarding Defendant's neighbor's accusations.  Ross Ornelas's declaration states that at

13   the time when Defendant was accused of peering into his neighbor's daughter's room,

14   Defendant was in fact at home, but the affidavit suggests that the brother lied about

15   Defendant being home in order to protect him.  (*Compare* Mot. Ex. C ¶ 4 *with* Mot. Ex.

16   A at 4.)  Again, the affidavit's representation of the neighbor's allegations are consistent

17   with the brother's statements in both of his interviews with the FBI in 2013, (Mot. Ex. A;

18   Opp. Ex. 1; *id.* Ex. 2), and this discrepancy does not demonstrate that Agent Abend's

19   statements were reckless or deliberately false when she wrote the affidavit.

21       Finally, Defendant argues that the affidavit recklessly or deliberately omitted the

22   existence of a "newly-opened, independent" investigation of the victim's allegations of

23   sexual abuse.  (Mot. at 13; Dkt. 102 ["Reply"] at 4.)  Defendant claims this separate

24   investigation revealed exculpatory and impeaching evidence.  (Mot. at 13; Reply at 4.)

25   Defendant attached records showing that in July of 2014, the Los Osos Police

26   Department requested records for a preliminary hearing regarding the victim's allegations

27   made back in 1997, which was to take place on August 28, 2014.  (Mot. Ex. G.)  The

28   records include a 1997 report of the victim's allegations, stating she was sexually abused

by Defendant, who fondled her vaginal area over her clothing on several occasions when they were home alone, that she experienced great anxiety and concern as a result of the incident, and that she was concerned about Defendant's daughter's safety as well.  (*Id.*)  The 1997 report contains one sentence stating that the "allegations of sexual abuse are unsubstantiated."  (*Id.*)

The documents concerning the new investigation are dated between January and July of 2014, (Mot. I Ex. G), but the search warrant was executed on June 11, 2013.  Defendant has not demonstrated that the new investigation was opened before the execution of the search warrant, or that Agent Abend knew about the investigation.  Even if she had, these documents do not on their own show that the alleged sexual abuse did not take place, so Agent Abend's failure to mention the new investigation in the affidavit does not rise to the level of "reckless" or "deliberate" omission.  Furthermore, Defendant has not satisfied the second prong in *Franks* requiring him to show that the victim's allegations were necessary for probable cause, because the affidavit still contains four other bases supporting probable cause to believe that Defendant possessed child pornography and had sexually explicit conversations with minors.[2]  *See Franks*, 438 U.S. at 155–56.

Defendant has not made "a substantial preliminary showing" of deliberate or reckless misstatements or omissions in Agent Abend's affidavit.  Therefore, his request for a *Franks* hearing is DENIED.

---

[2] At the evidentiary hearing, Defendant noted that Agent Abend's affidavit omitted Ross Ornelas's statements that he was conflicted about reporting Defendant to the FBI, (s*ee* Opp. Ex. 1 at 2), and that he does not have a good relationship with Defendant, (*see id.* Ex. 2 at 2).  He also pointed out that the affidavit omitted Ross Ornelas's statements that Defendant has property in the Philippines and has been married for ten years to a twenty-nine year old woman living in China.  (*See id.* Ex. 2 at 2.)  None of these omissions demonstrate recklessness or deliberateness on the part of Agent Abend, as they do not undermine probable cause to believe that Defendant possessed child pornography or otherwise exploited minors at the time the affidavit was executed.

### C. Overbreadth

Defendant argues that the search warrant was overbroad in terms of the items that law enforcement was authorized to seize.  (Mot. at 14–16.)  A search warrant must be specific, meaning it must have appropriate particularity and breadth.  *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993).  "Particularity is the requirement that the warrant must clearly state what is sought.  Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based."  *Id.*  However, "the specificity required in a warrant varies depending on the circumstances of the case and the type of items involved," and courts consider one or more of the following factors: "(1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued."  *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986) (internal citations omitted).

Regarding the first factor, Defendant argues that the search warrant was broader than the probable cause on which it was based.  (Mot. at 16.)  He argues that law enforcement should have been limited to searching the computer and computer related equipment described by Ross Ornelas for offending pictures, and upon finding incriminating evidence, thereafter attempt to obtain another search warrant for the search and seizure of additional items in the home.  (*Id.*)  The Ninth Circuit's *Schesso* opinion  is instructive here.  In *Schesso*, the affidavit supporting the warrant was based on a tip that U.S. authorities received from German authorities that an 18-minute child pornography video was made available for download by an Internet Protocol ("IP") address associated with the defendant.  *Schesso*, 730 F.3d at 1043.  The warrant authorized the seizure and off-site review of "[a]ny computer or electronic equipment or digital data storage devices

that are capable of being used." *Id.* The Court held that "Given the circumstances of that upload and the information supplied in the warrant application, the state court judge permissibly drew the 'reasonable inference' that there was probable cause to believe [the defendant] had other child pornography materials as well." *Id.* at 1045. As a result, the Court further reasoned that

> Because there was a fair probability that the [child pornography] video as well as other evidence of possession of and dealing in child pornography would be found on [the defendant's] digital equipment, the warrant was not overbroad. The government was faced with the challenge of searching for digital data that was not limited to a specific, known file or set of files. The government had no way of knowing which or how many illicit files there might be or where they might be stored, or of describing the items to be seized in a more precise manner. These factors, along with the detailed explanation of the need for off-site analysis and recovery, justify the seizure and subsequent off-premises search of [the defendant's] entire computer system and associated digital storage devices.

*Id.* at 1046 (internal citations omitted).

Here, Defendant's argument fails to consider the totality of the search warrant, which establishes probable cause supporting Defendant's continuing pattern of sexual interest in minor children, including, but not limited to, his prior possession of both hard copy and digital child pornography. (Mot. Ex. A; *id.* Ex. B.) The affidavit also points to evidence of child molestation, voyeurism, and sexually explicit "chats" with minors. (Mot. Ex. A.) The affidavit explains that based on Agent Abend's training and experience, this pattern indicates that Defendant views minors as "sexual objects" and, in her experience and training, this makes Defendant much more likely to create or collect child pornography. (*Id.*) Therefore, there is a substantial basis to conclude that law enforcement had probable cause to search the whole house and the vehicles, because the

affidavit showed that Defendant would likely have both digital and hard copy child pornography, not limited to those described by Ross Ornelas.  (*See id.*)

Although the first factor is sufficient, the Court also notes that the warrant here contained objective standards so that law enforcement could differentiate items subject to seizure from those which are not.  "Reference to a specific illegal activity can, in appropriate cases, provide substantive guidance for the officer's exercise of discretion in executing the warrant."  *Spilotro*, 800 F.2d at 964.  Here, the search warrant authorizes the seizure evidence and/or fruits of violations of "California Penal Code Section 288.3(a), concerning communications with a minor for sexual purposes as well as California Penal Code Section 311.1(a) through 311.11(d), concerning the possession, distribution, and production of child pornography."  (Mot. Ex. B.)  The warrant was limited to two specific sets of criminal acts, providing law enforcement with adequate guidance as to what should and should not be part of the search.  *See United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986) ("We think that the phrase 'involvement and control of prostitution activity' is narrow enough to satisfy the particularity requirement of the Fourth Amendment.  It effectively tells the officers to seize only items indicating prostitution activity.").

Additionally, law enforcement could not have described the locations and objects of the search more specifically.  The affidavit established that, based on Agent Abend's training and experience, defendants charged with crimes similar to those here usually do not discard child pornography and secure them in their homes "in a manner to avoid detection by law enforcement."  (Mot. Ex. A at 6.)  Defendant could have hidden the offending images *anywhere* in his home or cars to avoid detection.  Since probable cause here was not limited to possession of digital evidence, let alone the evidence described by Ross Ornelas, it was reasonable for law enforcement to search the whole house and all of his digital devices and the vehicles because they "had no way of knowing where the

images were stored." *Hay*, 231 F.3d at 637.  Therefore, the search warrant was not overbroad.

### D. Search Procedures and Protocols

Finally, Defendant argues that the search warrant lacked adequate and reasonable search procedures and/or protocols.  (Mot. at 16–18.)  He maintains that special procedures and protocols are necessary before the wholesale search and seizure of digital data for off-site review—namely, that segregation and redaction be done by specialized personnel or an independent third party, and if done by government personnel, they agree that they will not disclose to investigators "any information other than that which is the target of the warrant."  (*Id.* at 17 (relying on *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) ("*CDT III*")).)

Defendant's argument is unavailing in light of *Schesso*, where the Ninth Circuit held that the "absence of precautionary search protocols, suggested as *guidance* in the plurality's concurring opinion in *CDT III*, was not fatal here."  *See Schesso*, 730 F.3d at 1043 (emphasis added).  In *Schesso*, the Court declined to require the protocols laid out in *CDT III* because the defendant's "entire computer system and all his digital storage devices were suspect" because of to the affidavit's explanation that individuals who possess, distribute, or trade in child pornography "go to great lengths to conceal and protect from discovery" such images.[3]  *Id.* at 1049–50.  Additionally, the Ninth Circuit noted that "the search did not involve an over-seizure of data that could expose sensitive information about other individuals not implicated in any criminal activity—a key

---

[3] At the evidentiary hearing, Defendant also noted that the search warrant did not limit the amount of time that the Government could keep the seized evidence, and that the Government took almost a year to issue a report concerning such evidence.  This argument is unavailing in light of *Schesso*, 730 F.3d at 1049–50, and does not undermine the probable cause supporting the search warrant.  Furthermore, the amount of time the Government took to review the seized evidence was reasonable under the circumstances.

（

concern in both the per curiam and concurring opinions of *CDT III*—nor did it expose sensitive information about [the defendant] other than his possession of and dealing in child pornography. Indeed, inclusion of the search protocols recommended in the *CDT III* concurrence would have made little difference for [the defendant]." *Id.* at 1049.

Defendant's case is on all fours with *Schesso* because the affidavit demonstrates that Defendant's entire computer system and digital storage was suspect due to similar concerns that Defendant would go to great lengths to hide child pornography.  (*See* Mot. Ex. A.)  Further, Defendant has made no showing that the search could expose sensitive information about himself or others separate from his possession of child pornography. Therefore, the search warrant here was not defective for lacking the search and seizure protocols laid out in *CDT III*.[4]

//
//
//
//
//
//

---

[4] In his reply, Defendant also contends that law enforcement did not provide him with a copy of the search warrant in violation of Rule 41(f)(1)(C) of the Federal Rules of Criminal Procedure.  (Reply at 1–2.)  At the evidentiary hearing, the Government presented evidence that a copy of the search warrant was left on the dining room table in the house.  (Evidentiary Hearing Exs. 4 –8.)  In any event, Defendant concedes that this failure is generally not grounds to suppress evidence and instead contends that suppression is warranted here because he was prejudiced and law enforcement acted in deliberate disregard of the rule.  (*Id.* at 2.)  Defendant relies on *United States v. Williamson*, 439 F.3d 1125 (9th Cir. 2006), where the Ninth Circuit declined to suppress evidence because "we have repeatedly held— and have been instructed by the Supreme Court—that suppression is rarely the proper remedy for a Rule 41 violation."  *Id.* at 1132.  Defendant has provided no evidence that law enforcement acted deliberately in their alleged failure to present the warrant, and he has not substantiated his claim of prejudice, which requires a showing that "the search would not have occurred or would not have been so abrasive if law enforcement had followed the Rule."  *Id.* at 1133.  Therefore, the Court declines to invoke this rare exception to the general principal that a Rule 41 violation does not justify suppression of the search warrant.

**IV.  CONCLUSION**

For the foregoing reasons, Defendant's motion to suppress the search warrant and his request for an evidentiary hearing are DENIED.


DATED:      September 27, 2016

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE